LAW OFFICES OF

# JAY GOLDBERG, P.C.

250 PARK AVENUE
TWENTIETH FLOOR
NEW YORK, NY 10177-0077

May 1, 2007

TELEPHONE (212) 983-6000
TELECOPIER (212) 983-6008

**BY ECF AND**
**FEDERAL EXPRESS**

Hon. Ellen Bree Burns
United States District Judge
District of Connecticut
141 Church Street
New Haven, CT 06510

Re:  United States v. Ianniello
06 cr 161

Dear Judge Burns:

We enclose a transcript of the defendant's sentencing proceedings before the Honorable Kimba M. Wood, Chief Judge, United States District Court, Southern District of New York (Exhibit A).

We are also sending along by hard copy a compendium of the defendant's medical record which attests to his exceedingly precarious health. The plea agreement provides that in light of the defendant's health issues the government will not object to a three level downward departure under Guideline 5H1.4 "which will result in a total offense level of 15. A total offense level 15, with a criminal history category III, which the parties calculate the defendant to be based upon information currently available, results in an advisory sentencing range of 24-30 months . . ."

Before describing the facts of this case, we would be remiss if we did not first compliment the government for the way in which they have approached resolution of this case. A great deal of time was spent in discussions with AUSA Gustafson toward reaching what counsel believed -- recognizing that the final determination is with the court -- would be the appropriate result in this case. To be

Hon. Ellen Bree Burns
May 1, 2007
Page 2

sure, even after an agreement had been reached the government saw fit to modify downward its stance in the final plea agreement with an agreed upon sentence range of 24-30 months.

       As the Southern District of New York pre-sentence report indicated, quoting the plea agreement (Exhibit B):

> there are unique facts and circumstances of this case and in light of the defendants actions, which facilitate the proper administration of justice in a unique manner not adequately taken in to consideration by the sentencing commission in formulating the guidelines. There should be a departure therefrom in accordance with the plea agreement.

       <u>Though not binding on this Court or the United States Attorney, the government in the Southern District repeatedly indicated that given what it knew about the defendant it did not believe that it would be in the interests of justice to impose a sentence that would lead to lifetime incarceration.</u> AUSA Treanor stated at the sentencing: "I didn't purport in any way to know Mr. Ianniello or understand what kind of person he is. I did get an idea of what conduct he has engaged in and I can say that our view of Mr. Ianniello changed over time from when he was first arrested ..." Sentencing minutes, page 8. As a result, the government took the position it did with respect to rejecting the notion of a lifetime incarceration. The government has not hesitated in a case it deemed appropriate despite the age of a defendant, to seek what would in effect be a lifetime sentence.

       In the Southern District the probation office found that the guideline range was between 41-51 months. Yet, despite the guideline computation, the recommended sentence by probation was 30 months (as has been noted in the pre-sentence report before Your Honor at page 23). Nonetheless, the Court imposed an 18 month sentence commenting in part:

> The history and characteristics of the defendant are mixed. He has a history of criminal conduct. He also has a history of valor in the war and protecting a corrections officer from other inmates, as well as assisting the government in the

Hon. Ellen Bree Burns
May 1, 2007
Page 3

 Etan Patz case.  With respect to deterrence, I believe that defendant is individually deterred already.  I believe that general deterrence requires some time in custody.  It is my view that a sentence of 18 months . . . is the correct sentence and I impose that sentence.

 Such sentence was obviously well below the guidelines, below the recommendation of probation, and at the very bottom of the agreed upon plea range.  In so doing, the Court took into account the factors under 18 USC §3553, and the individual characteristics of the defendant.

 Those factors taken into account by Judge Wood in the Southern District of New York, in imposing a sentence at the lowest end of the bargained for plea agreement should, we respectfully pray, be taken into account by this Court.  Many, but not all, such factors were contained in a letter to the District of Connecticut probation office, and were attached to the pre-sentence report as an addendum.  We describe them below for the Court's convenience.

## THE CLAIM THAT DEFENDANT
## WAS AN ACTING BOSS

 The government has not charged this, and the plea, limited as it is to a conspiracy to engage in racketeering by defrauding the government of taxes and the conspiracy to evade taxes, do not provide a basis for any such assertion.  The plea in the Southern District, having to do with illegal payments from a union and its medical office similarly did not invoke any such claim.  Nonetheless, the probation officer has made this reference and proceeding as we must in complete good faith we respond thereto.

 The report states that Mr. Ianniello was an "acting boss."  However, it is submitted that he did not exhibit such leadership characteristics that one would expect of the "Acting Boss" of a New York crime family. See United States v. Gotti, 495 F.3d 296, at 348 (2nd Cir. 2006).  If the government's position be so, the family had a rotating group of persons occupying that position.  The defendant's authority and characteristics were far, far distant and not typical when compared with others who occupied that position.

Hon. Ellen Bree Burns
May 1, 2007
Page 4

We annex two releases from Justice, one from the Eastern District of New York and the other from the Southern District of New York (Exhibits C and D). Dominic Cirillo was one acting boss who it is alleged led 40 family members and associates in a host of criminal activities, including predicate acts of murder. As far as the Southern District is concerned, Liborio Bellomo it is alleged was involved in narcotics trafficking, money laundering, firearms trafficking, and sanctioned an act of murder. Also annexed (Exhibit E) is a statement attributed to a law enforcement official that "we're carrying him [Daniel Leo, a reputed member of the violent East Harlem Purple Gang] as the acting boss." The Purple Gang was involved in narcotics and gangland murders. Here, this defendant is entitled to be sentenced for his conduct, and not by reference to the horrendous conduct committed by others who the government claimed in the attached articles bore the title of Acting Boss, such as Cirillo, Bellomo, and Leo.

How very different was defendant's behavior in the case at bar, and this can be gleaned from the charges to which he was required to plead: Count 2, a racketeering conspiracy in violation of 18 USC §1962(c) with predicate acts of defrauding the IRS of taxes due; and Count 62, defrauding the IRS in violation of 18 USC §371. In the Southern District of New York he plead to participating in the affairs of a racketeering enterprise by the receipt of monies from a union and also obstructing a Grand Jury investigation into his involvement.

Obviously, these are serious crimes for which there is no justification. They are not, however, crimes of violence. The government in the Southern District stood by its position that given Mr. Ianniello's cooperation with the United States Attorney's office, his health, and the unique facts and circumstances of this case (all described ion detail below), the defendant's actions "facilitated the proper administration of justice in a unique manner."

The defendant on December 20, 2006 signed an agreement with the IRS for the payment of taxes in the amount of $277,971, and will pay at the time of sentence partial payment in the amount of $100,000 in connection therewith. He is not in default of that agreement in any respect.

At the pain of repetition (and without in any way limiting the authority of this Court) we trust that the government will agree with its counterpart in the

Hon. Ellen Bree Burns
May 1, 2007
Page 5

Southern District of New York that this defendant is not the kind of person where a sentence should be imposed which would have the effect of incarcerating him for the balance of his now limited lifespan. The government here has pursued this investigation for a lengthy period and, after due consideration concluded that the appropriate sentencing range should be 24-30 months. The decision to place the defendant within this range was obviously the result not only of the decision of the Assistant United States Attorney in charge of this case, but had to have been approved by supervising prosecutors. In short, we must assume that the decision was not arrived at lightly, but rather was measured by the totality of the circumstances.

## ASSISTANCE WITH A GOVERNMENT INVESTIGATION

Judge Wood commented favorably on the defendant's cooperation with the United States Attorney's office in a major investigation. Mr. Ianniello, without any hesitation, gave such worthwhile assistance and cooperation that a letter was written on his behalf under the name of the then United States Attorney for the Southern District of New York (Exhibit F). We respectfully submit that this should be factored into fashioning an appropriate sentence.

The government sought out the cooperation of defendant, calling upon him to lend assistance in an investigation that was of great concern to the government. The United States Attorney's Office sought to speak with a certain individual who possessed vital information. Such individual made himself difficult to locate, inasmuch as he did not want to speak to the government.

Mr. Ianniello, through his counsel, was contacted and asked to render assistance in locating this crucial witness. The defendant was instrumental in assisting the government in locating this witness, and the government was able to interview the witness and learn the information it had sought.

## THE DEFENDANT'S HEALTH

Judge Wood commented several times on the exceedingly precarious state of the defendant's health. In a letter dated August 18, 2006 Dr. Albert Ferrara opined that Mr. Ianniello has a life expectancy of less than five years (Exhibit G). We are sending to the Court a book, some eight inches thick, that contains the medical

Hon. Ellen Bree Burns
May 1, 2007
Page 6

records that evidence this defendant's grave health issues.   Accompanying this
memorandum as Exhibit H is the Table of Contents from this book.

It must be noted that the United States Attorney in this District
Specifically agreed that they would not object to a three point downward departure
provided for by Sentencing Guideline section 5H1.4.

The medical records show that Mr. Ianniello suffers from the following
conditions:

- a cerebral stroke followed by multiple transient ischemic attacks
  ("TIA's")
- prostate cancer
- chronic renal failure
- triple bypass heart surgery
- the implantation of a pacemaker for severe heart rhythm problems
  which requires frequent monitoring
- congestive heart failure
- chronic obstructive pulmonary disease
- bronchial asthma

Mr. Ianniello's pulmonary specialist, Dr. Fred Glasser, recites in a letter
dated August 8, 2006 concerning Mr. Ianniello:

Pulmonary function tests performed in January of 1996
revealed severe obstructive airway disease.

His forced expiratory volume was only 38% of predicted at
that time.

Mr. Ianniello complains of shortness of breath on minimal
exertion.  He has difficulty ambulating at times and uses a
cane.

Cold air exposure makes his breathing worse and causes
him to wheeze and have shortness of breath.

Hon. Ellen Bree Burns
May 1, 2007
Page 7

In the Summer of 2000, the patient underwent coronary artery bypass grafting for his coronary artery disease and post-operatively Mr. Ianniello had a cerebral vascular accident (stroke).

In 2002, Mr. Ianniello was diagnosed with prostate cancer.

In August 2003, Mr. Ianniello was admitted to Winthrop University Hospital for congested heart failure.

In August of 2004, Mr. Ianniello sustained a deep venous thrombosis of his left leg and due to his multiple medical problems a filter was placed in his inferior vena cava to prevent thrombosis (a clot) from traveling to his lungs.

In April 2005, the patient had radioactive seed implants placed into his prostate for his previous diagnosis of prostate carcinoma.

A CT of the thorax on July 21, 2005 revealed bilateral pleural plaques consistent with asbestosis.

My impression is that Mr. Ianniello is an 87 year old white male with multiple medical problems including severe chronic obstructive pulmonary disease (emphysema) coronary artery disease, congestive heart failure, status-post cerebral vascular accident and prostate carcinoma. Due to his severe chronic obstructive pulmonary disease he becomes short of breath on minimal exertion (walking, bending over, showering, etc.)

(Exhibit I)

Hon. Ellen Bree Burns
May 1, 2007
Page 8

Dr. Bradley Sporkin opined on August 11, 2006 that:

Mr. Ianniello underwent coronary bypass grafting in August of 2000 by Dr. Lomandola at St. Francis Hospital. Since that time he has had intermittent periods of cardiopulmonary instability but progressive exercise limitation and ongoing pulmonary problems. In 2003 we had seen the patient at Winthrop University Hospital because of what was felt to be new onset congestive heart failure. He subsequently underwent invasive study at St. Francis Hospital. Although that study did not include a right heart catheterization, there was evidence of graft patency but elements of left ventricular dysfunction and diastolic heart failure. With aggressive diuresis and drug therapy he stabilized. Since that time he has had requirements for close attention to fluid, renal insufficiency, pulmonary dysfunction, but no elements of angina pectoris or profound heart failure.

\*       \*       \*

Although on most recent visit [Mr. Ianniello] shows clinical stability he has somewhat tenuous cardiovascular abnormalities that will continue to require follow-up . . . there is continued potential cardiovascular and cardiopulmonary decline and requirements for follow-up monitoring and observation.

(Exhibit J)

Attached as Exhibit K is the current schedule for the monitoring of Mr. Ianniello's pacemaker. The last currently scheduled date is September 20, 2007, and we understand from Mr. Ianniello's physician that the pacemaker will need to be regularly monitored every month thereafter.

Hon. Ellen Bree Burns
May 1, 2007
Page 9

The government in its plea offer, as we have earlier stated, made clear in discussions that it believes this case does not warrant confining the defendant for the balance of his life. A period of incarceration beyond 24 months would, it is submitted, lead to irreversible harm and the likely death of defendant while incarcerated.

## SAVING THE LIFE OF A CORRECTION OFFICER

Judge Wood commented how unusual it was to receive from a correction officer the kind of letter of commendation for the heroic conduct described below. While Mr. Ianniello was incarcerated at the Metropolitan Correctional Center he witnessed a Correctional Officer being attacked by inmates. The Correctional Officer was struck in the head by what was later learned to be a billiard ball. The Correctional Officer fell, unconscious, striking his forehead on the floor causing a cut that required stitches.

Matthew Ianniello immediately rendered assistance. While the officer lay helpless and unconscious on the floor, Mr. Ianniello pushed the officer's body alarm button and stood over him, protecting the officer from additional harm until two other officers arrived. This incident is confirmed in Mr. Ianniello's prison records (Exhibit L), and his actions, it is submitted, call for the Court's consideration in fashioning his sentence.

Such action comes as no surprise since, as described below, the defendant during his military service was awarded the Bronze Star for his heroics under fire.

## DEFENDANT'S HEROISM IN WORLD WAR II

Judge Wood made specific reference to the defendant's acts of heroism in the Second World War. As documented by the National Personnel Records Center (Exhibit M), Mr. Ianniello served with distinction in World War II. He took part in four invasions in the Pacific, storming the beach four times.

Hon. Ellen Bree Burns
May 1, 2007
Page 10

Mr. Ianniello was awarded the following decorations:

- Bronze Star Medal
- Good Conduct Medal
- Asiatic-Pacific Campaign Medal with 4 bronze service stars
- World War II Victory Medal
- Philippine Liberation Ribbon
- Honorable Service Lapel Button WWII
- Marksman Badge with Rifle Bar

The United States Army confirms (Exhibit N) that Mr. Ianniello was awarded the Bronze Star for the following act of heroism:

AWARD OF BRONZE STAR MEDAL. By direction of the President, under the provisions of Executive Order No. 9419, 4 February 1944, (Sec II, Bulletin 3, WD, 1944), a Bronze Star Medal is awarded by the Commanding General, Sixth Army, to the following named enlisted man:

Corporal Matthew Ianniello, 32693592, Coast Artillery Corps, United States Army, APO 323. For gallantry in action at Cape Merkus, New Britain. During the night of 16 December 1943, when one gun in the perimeter defense of his unit was endangering friendly troops with misdirected fire, Corporal Ianniello, convinced that the gun had not fallen to the enemy, crawled forward to the position despite heavy fire and the strong possibility of the enemy's having the gun. He shouted to stop the fire, then readjusted the range. By his intrepid action, Corporal Ianniello saved the gun crew, prevented unnecessary casualties and facilitated coordination of the defense.

Clearly the Court took into account many factors when it chose to impose a sentence under 18 USC §3553.

Hon. Ellen Bree Burns
May 1, 2007
Page 11

## THE JUDGMENT OF THE PRETRIAL SERVICES OFFICER

According to the pre-sentence report in the Southern District, Pre-Trial Services Officer Arthur Bobyak has characterized defendant's compliance with his obligations related to his pre-trial release as: "outstanding."

## THE GUIDELINE SENTENCE AGREED TO BY COUNSEL

The way in which the guideline range is arrived at in this District, with the agreed upon plea to a particular crime, is in the following way. Counsel acknowledges first that sentencing is wholly within the province of the Court. The United States Attorney (with enormous knowledge of the facts and circumstances leading to the indictment, the background of the defendant, and access to law enforcement officials) makes a judgment as to the sentence it believes would best serve the ends of justice. The offer that the government makes to the defense is cleared through channels within the office, and the approved guideline range is then offered to the defense.

For the most part, there is little movement once the prosecution has made its offer. If the offer is accepted, the parties set about (consistent with the facts) to craft a plea to criminal behavior that would afford the defendant the opportunity of being sentenced within the agreed upon range. The process is often lengthy and, as noted, the result of careful consideration.

All of that describes what occurred in this case when the United States Attorney made clear its position that it was offering the sentencing range it did (24-30 months). Despite the opinion in the Pre-sentence Investigation Report, it is expected that the government will adhere to such guideline range. It has been agreed between counsel that the government will ask for a concurrent sentence with the one imposed by Judge Wood in the Southern District of New York.

The Pre-sentence Investigation Report in New York indicates that the computation of the applicable guideline was in error because points should have been added by reason of defendant's plea to a case pending in the District of Connecticut, and because the parties did not consider a conviction in New Jersey.

Hon. Ellen Bree Burns
May 1, 2007
Page 12

   The inclusion in the Pre-sentence Investigation Report before Your Honor of an additional point related to the New York case ignores the fact that the plea taken in New York followed discussion between the prosecutors in New York and in Connecticut.  There was such coordination that it was agreed that defendant would not commence serving his sentence in the Southern District until the start of his sentence in Connecticut.

   It was understood that the prosecutor in New York wanted the plea in that district prior to the plea entered in this case.  It was impossible to schedule the defendant's sentencing in Connecticut before the imposition of sentence in the Southern District of New York.

   Additionally, U.S.S.G. §4A1.2(a)(1) defines "prior sentence[s]" as "conduct not part of the instant offense."  In the instant matter, Ianniello has pleaded to Counts originating from his membership in the Genovese organized crime enterprise. In the New York matter, Ianniello is similarly charged with Racketeering concerning his membership in the same enterprise.  Under these circumstances, the conduct charged in the New York case is part and parcel of the charges to which Ianniello pleaded guilty here.

   Application Note 3 to §4A1.2 provides that:

> Prior sentences are considered related if they resulted from offenses that . . . (B) were part of a single common scheme or plan.

   Here, Ianniello's participation in the affairs of the Genovese crime family are the central theme of each indictment and as such should be considered the same offense conduct under §4A1.2(a)(1).  See United States v. Garecht, 183 F.3d 671, 674 (7th Cir. 1999)("the Note also states where the defendant makes two cocaine sales, and is charged in federal court for one and state court for the other, the state court conviction would be relevant conduct to the federal charge and is not a prior sentence under U.S.S.G. §4A1.2(a)(1)").

Hon. Ellen Bree Burns
May 1, 2007
Page 13

## THIS COURT'S DISCRETIONARY AUTHORITY
## TO CREDIT THE DEFENDANT
## FOR TIME SPENT IN HOME CONFINEMENT

In the plea agreement it was agreed that we would not argue for a departure downward from the range of 24-30 months. However, we do urge that the Court consider the matter of the defendant's extended home detention as justifying the imposition of a 24 month sentence. This would be consistent with the principles set forth in United States v. Carpenter, 320 F.3d 334 (2d Cir. 2003) where the Circuit authorized the credit of time spent on house arrest.

By the time Ianniello will be sentenced he will have been subject to house arrest in connection with this case -- with the strictest conditions -- since June 9, 2006. The court stated in United States v. Carpenter, 320 F.3d at 345:

> Where, as here, the defendant has served time in home detention that will not be credited toward his new sentence, he has served a portion of the just punishment for the offense, the served time has provided a portion of the necessary deterrent, and, if home detention is not taken into account, he will, upon his ultimate release, have served a longer sentence than would a similarly situated defendant who had been correctly sentenced under the Guidelines in the first instance. Because the Guidelines do not consider these mitigating circumstances, the district court is permitted to depart downward to account for them.

In the instant case, where there is no allegation of violence on Ianniello's part, where compliance with the conditions of pretrial release has been outstanding, and where the plea agreement is for a range of 24-30 months imprisonment, the Court is requested to take these factors into account pursuant to 18 U.S.C. §3553(a) in fashioning a 24 month prison term.

Hon. Ellen Bree Burns
May 1, 2007
Page 14

## REQUESTED PLACE OF INCARCERATION

In light of Mr. Ianniello's above noted medical condition, we respectfully request that he be incarcerated at the Federal Medical Center at Devens, in Ayers, Massachusetts. Such request was made of Judge Wood in the Southern District, and the Court did indeed recommend that institution.

## CONCLUSION

For the foregoing reasons, we respectfully request that this Court see fit to sentence Mr. Ianniello under 18 USC 3553 to the agreed upon sentence of 24 months, that being the lowest end of the bargained for and agreed to plea agreement. We further respectfully request that the sentence imposed be concurrent with the 18 month sentence in the Southern District of New York, for that was what was contemplated by counsel.

Respectfully,

Jay Goldberg