```
                               74G8IANS.txt
                                                                              1
     74G8IANS
1    UNITED STATES DISTRICT COURT
1    SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x
2
3    UNITED STATES OF AMERICA,
3
4              v.                              05 Cr. 774 (KMW)
4
5    MATTHEW IANNIELLO,
5
6                   Defendant.
6
7    ------------------------------x
7
8                                              April 16, 2007
8                                              2:10 p.m.
9
9    Before:
10
10                       HON. KIMBA M. WOOD
11
11                                             District Judge
12
12                          APPEARANCES
13
13   MICHAEL J. GARCIA
14        United States Attorney for the
14        Southern District of New York
15   TIMOTHY TREANOR
15   BENJAMIN GRUENSTEIN
16   ELIE HONIG
16        Assistant United States Attorneys
17
17   JAY GOLDBERG
18   RICHARD WARE LEVITT
18   JARED LEFKOWITZ
19   NICHOLAS KAIZER
19        Attorneys for Defendant
20
20
21
21
22
23
23
24
25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
                                                                              2
     74G8IANS
1              (Case called)
2              THE DEPUTY CLERK:  Would counsel please state their
3    appearances.
4              MR. TREANOR:  Jim Treanor, Ben Gruenstein and Elie
5    Honig for the government.
6              MR. GOLDBERG:  Jay Goldberg for the defendant.
7              THE COURT:  Good afternoon.
8              We are here for the sentencing of Mr. Ianniello.  I am
9    going to begin by asking Mr. Goldberg, have you and your client
10   had an adequate opportunity to review the presentence report?
                                 Page 1
```

74G8IANS.txt
```
11             MR. GOLDBERG:  We have, your Honor.
12             THE COURT:  Do you wish any changes made to it?
13             MR. GOLDBERG:  With respect to the computation of the
14   sentence under 4A1.2, where the probation officer added another
15   point, we believe that it falls within the related case
16   doctrine which appears at Application Note 3 because it's
17   related to the Connecticut case, and for all intents and
18   purposes, the people in Connecticut wanted a plea before the
19   end of last year.
20             THE COURT:  I understand that you do not agree with
21   the computation of the offense level or the criminal -- you
22   don't agree with the criminal history category either.  I
23   understand that.  If you have any other changes you would like
24   made, let me know.
25             MR. GOLDBERG:  No other changes.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```
3
```
     74G8IANS
 1             THE COURT:  OK.
 2             Now, I have questions for the government.  There are
 3   some undercurrents in the defense submission in which the
 4   defense purports to characterize the government's views, and I
 5   want to understand the government's position.
 6             Does the government believe that the Connecticut
 7   conviction should not be counted in the criminal history, and
 8   if so, is that because, as the defense says, the Connecticut
 9   plea was forced to be early, or is it because all of
10   defendant's conduct is Genovese crime family conduct and is not
11   counted separately, or both?
12             MR. TREANOR:  In looking at the related cases section,
13   I think that it's proper under the guidelines that the criminal
14   history for the plea in Connecticut be counted.  I do
15   recognize, however, that there is an element of unfairness in
16   the fact that Mr. Ianniello could have withheld his plea in
17   that case and not incurred a criminal history point but chose
18   to go forward and pled in that case incurring the point and
19   thereby saving the government resources.
20             THE COURT:  I think maybe a lot is encompassed by what
21   you say.  Let me ask you to step back for just a moment.
22             The Connecticut conduct, which was in the trash
23   hauling business in Connecticut, I believe it was indicted in
24   1989?  Do I have it right?
25             MR. TREANOR:  No.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```
4
```
     74G8IANS
 1             THE COURT:  That's what it says in the PSR.  What is
 2   the date?
 3             MR. TREANOR:  There was a case in 1989, but Mr.
 4   Ianniello was indicted in Connecticut over the past --
 5             THE COURT:  This time.
 6             MR. TREANOR:  This time, a year or maybe a year and a
 7   half ago with participating in a scheme to control the pricing
 8   and routes of the trash collection in Connecticut.
 9             THE COURT:  My question goes to whether the government
10   knew about the allegations at the time of the plea agreement?
11             MR. TREANOR:  Yes, your Honor.  We had full knowledge
12   of the investigation and the case in Connecticut at the time
13   Mr. Ianniello pled in this district.  In fact, I tried,
14   together with Mr. Goldberg, to resolve both cases at one time,
15   and that wasn't the way that Mr. Ianniello or Mr. Goldberg
```

74G8IANS.txt

16  chose to proceed, but he ended up resolving the case here in
17  the Southern District first and then resolving the case in
18  Connecticut after that, but we were willing to work on
19  resolving both at the same time.
20              I am not quite certain why it is.  I wasn't a
21  participant in those later discussions on the Connecticut case.
22  I am not sure why that happened that way, but there is at least
23  one point, I think, assigned in criminal history to Mr.
24  Ianniello really based on the timing of his plea more than
25  anything else.  I hope that's helpful.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

74G8IANS
1              THE COURT:  It is.
2              Now, if someone were to take unlawful payments in a
3   trash hauling business in one state and were to commit labor
4   racketeering in another, but that person is not part of a crime
5   family, I take it those would be counted as separate,
6   completely separate.  I am wondering if the government accepts
7   the defense argument that all conduct that's part of Genovese
8   crime family conduct is essentially the same conduct.
9              MR. TREANOR:  No, your Honor, we don't take that
10  position.  We do recognize that Mr. Ianniello's conduct in both
11  cases was in furtherance of his membership in the Genovese
12  organized crime family.  We also recognize that if the crime
13  charged in the two cases had been in the same indictment, they
14  would have been grouped together as crimes committed in
15  furtherance of the Genovese crime family, but they were not,
16  they were indicted separately.  And sometimes the guidelines
17  operate in sort of a formulaic way, and that's why I started
18  out by saying, your Honor, I believe the point is applied, but
19  I do also believe the additional point for criminal history
20  does apply to Mr. Ianniello for the Connecticut case but there
21  is some element of unfairness in that.
22             THE COURT:  I understand.
23             MR. TREANOR:  Obviously, we did not have that plea at
24  the time we negotiated the plea agreement so it wasn't clear
25  whether there would be a plea or not, to me at least, so we did

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

74G8IANS
1   not include that in our calculation.
2              THE COURT:  Right.  I know that.  I looked at the
3   dates.  I am wondering whether there is any logic, and I think
4   you're saying there is not, any logic to my nulling that plea
5   now, even though it wasn't part of the plea agreement.  And I
6   think you're saying you're not going to argue there is logic
7   behind that.
8              MR. TREANOR:  That's right.
9              THE COURT:  What is the forfeiture amount?
10             MR. TREANOR:  The forfeiture amount is $75,000 as in
11  the plea agreement, and we have a paralegal that has prepared
12  an order, but I couldn't find it on the way over here, but I
13  think she is bringing it over now.
14             THE COURT:  Is that separate from the 130,000 plus
15  that was found in his house?
16             MR. TREANOR:  Yes.  That amount was seized by the
17  agents in the Connecticut case, and I believe forfeiture
18  proceedings have begun against that money and there is no
19  intention on their part to return that to Mr. Ianniello.
20             THE COURT:  OK.  In the plea agreement, at the top of

Page 3

```
                                74G8IANS.txt
21      page 4, the government agrees that a three-point downward
22      departure is warranted.
23                MR. TREANOR:  Yes, your Honor.
24                THE COURT:  I am wondering what the logic is of three,
25      that is, what underlies the government's view?
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
                                                                        7
        74G8IANS
 1                MR. TREANOR:  Well, your Honor, this obviously is an
 2      unusual circumstance in this case.  It sets this case aside
 3      from other cases in my office.  We don't typically stipulate to
 4      the application of downward departures.  However, this was a
 5      very unusual, extraordinary case in some ways.  Mr. Ianniello
 6      is 87 years old, has some health issues that have been
 7      documented by his counsel in an extensive submission to the
 8      Court, and was facing jail time that probably would have forced
 9      a trial in this case.
10                As a result of that, we took a look at our evidence,
11      and your Honor knows some of the evidence from presiding over
12      the trial of Ciro Perrone and some of the codefendants, but we
13      had extensive enterprise proof against Mr. Ianniello.  We would
14      have been calling some of the better known government
15      cooperating witnesses to the witness stand.  Their testimony
16      probably would have taken up an extensive amount of time.  We
17      would have had a very long trial before your Honor to get to
18      the conviction that we were seeking, after which time Mr.
19      Ianniello may not have been, in our view, facing a lot more
20      time than he agreed to in the plea agreement.
21                As a result of that, and also, Mr. Ianniello's plea
22      had the effect, not completely but had the effect of really
23      sort of breaking the logjam in this case.  There were a number
24      of defendants who had not pled.  In fact, the vast majority of
25      the defendants in the indictment, which totaled about 20
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
                                                                        8
        74G8IANS
 1      defendants, had not pled, at least at the time Mr. Ianniello
 2      agreed to plead.  I know Mr. Goldberg had extensive discussions
 3      with other defendants' lawyers in the case about pleading
 4      guilty, and then Mr. Ianniello's act of pleading guilty caused
 5      additional individuals to come forward and plead guilty.  We
 6      recognize that the government was saving an extraordinary
 7      amount of resources in that regard by agreeing to a disposition
 8      with Mr. Ianniello that, frankly, we thought fell within the
 9      realm of fairness.
10                There are other issues that Mr. Goldberg has cited
11      that we acknowledge are true and do make this case more
12      unusual, but this was a practical decision, one that we think
13      the Court is not likely to see again and one that we thought
14      ended up in a fair resolution with an extreme savings to both
15      the court and the government in terms of resources.
16                THE COURT:  Now, if the one point that we have talked
17      about is added, does that bring the offense level above the 13
18      total offense level agreed to in the plea agreement?  I take it
19      it does.
20                MR. TREANOR:  Well, your Honor, the criminal history
21      has two issues that were not anticipated.  I think it's similar
22      to the problem that we had in the case with John Ambrosio
23      before your Honor.  We had another offense that was not
24      detected when we initially ran our criminal history check.
25                Your Honor, I have had experience with a number of
                                    Page 4
```

74G8IANS.txt
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

9

74G8IANS
1  cases in which our criminal history checks have not -- it seems
2  that the probation department is better at identifying
3  sometimes criminal convictions.
4          THE COURT:  Well, they have more time than you do
5  probably.
6          MR. TREANOR:  Maybe, your Honor.  That's probably a
7  better way to put it.
8          However, here there was another conviction that we
9  simply weren't aware of when we were negotiating the plea in
10 this case.  So there is another conviction in New Jersey that
11 is added to the criminal history that neither Mr. Goldberg nor
12 myself talked about when we negotiated the plea agreement.  And
13 between the two of them they have the effect of raising his
14 criminal history from a category III to a category V.
15         THE COURT:  Thank you very much.
16         So at Criminal History Category V and at a total
17 offense level of 13, which is calculated by deducting a
18 three-point downward departure, the sentencing guideline range
19 would be 30 months to 37 months.
20         MR. TREANOR:  That's correct, your Honor.
21         THE COURT:  Thank you.
22         Mr. Goldberg, I would be glad to hear anything that
23 you, your colleagues and Mr. Ianniello wish to say.
24         MR. GOLDBERG:  Thank you, your Honor.
25         I have no fault with what the government has said.  We

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

10

74G8IANS
1  have had extensive discussions in connection with this case and
2  they have proceeded with absolute fairness.
3          I have made certain statements in the letter, not
4  perhaps verbatim but my recollection of what the government has
5  said.  In light of the defendant's age, they did not feel he
6  was the kind of person -- and this is the government's view, in
7  no way affecting your Honor's view -- that he was not the kind
8  of person who deserved to be in jail for the remainder of his
9  life.  I made that statement twice in the letter because it was
10 unusual.  The fact that the defendant is 87 years doesn't stop
11 the government in an appropriate case for arguing for a kind of
12 sentence that would amount to a lifetime imposition of a period
13 of incarceration.  The government this morning advised me they
14 did not disagree with anything that I said in the letter and
15 that I apparently accurately reported the government's
16 position.
17         Now, Mr. Treanor and I have had discussions about this
18 case before the plea for a number of months.  We went back and
19 forth on what we thought was the appropriate sentence from our
20 perspective, in no way affecting your Honor of course.  And it
21 was the government's view that a sentence of 18 to 24 months
22 would at least enable the defendant to have some hope at age 87
23 of seeing the street.
24         Now, I notice that the probation officer has commented
25 upon the -- and I hope I am using the right word -- unique

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

74G8IANS
1  circumstances of this case, and I have heard what your Honor

```
                                 74G8IANS.txt
 2      has said with respect to the guidelines.  The probation officer
 3      recommends a 30-month prison term.
 4                Now, the way I had negotiated with Mr. Treanor,
 5      despite the provisions of 3553, there would be no effort on my
 6      part to argue for less than 18 months, and I had questioned him
 7      about the point that had been found by the probation service,
 8      and he told me that, in no uncertain terms, the government
 9      would abide by the plea agreement.
10                THE COURT:  Well, they of course need to abide by
11      their agreements.  They also need to answer the Court's
12      questions about the facts.
13                MR. GOLDBERG:  The plea agreement doesn't bind your
14      Honor.  Your Honor has to do what the Court feels is
15      appropriate.
16                I sent your Honor, and I thought you ought to have it,
17      as bulky as it was, because it represented the true medical
18      history of the defendant.
19                THE COURT:  I did go through it.  Some is legible,
20      some is not, but there is enough there that is legible that
21      suggests very serious medical conditions that there is no need
22      to submit anything else.
23                MR. GOLDBERG:  There is also a letter in our
24      submission from the United States Attorney pointing to the
25      defendant's cooperation in what was an important investigation
                          SOUTHERN DISTRICT REPORTERS, P.C.
                                    (212) 805-0300
```
                                                                         12
```
        74G8IANS
 1      that was being conducted by the office, and for the United
 2      States Attorney to write a letter in support of defendant is
 3      not a usual situation.
 4                THE COURT:  Well, I agree with you and, in fact, for
 5      CO Gilmore to have written the letter is also unusual.
 6                MR. GOLDBERG:  Yes.  The defendant has somewhat of a
 7      remarkable history, and I am not arguing for any merit badge,
 8      but when the government referred to him as the acting boss, the
 9      government told me that there are a number of bosses on a
10      rotating basis, but he wasn't the kind of person that we
11      associate with the title of acting boss.
12                I have given you a number of releases from the
13      Department of Justice, I believe, that talk about regimes that
14      specialize in murder, narcotics and crimes of violence.  In
15      this case, it's important to note you sat on the Perrone case,
16      which was a loansharking case, extortionate credit case.  The
17      defendant supposedly was at the apex of this family, yet he was
18      not charged in the loansharking branch of the case.  With
19      respect to the other branch of the case, gambling, he wasn't
20      charged in that at all.
21                Now, I am sure the government had good reason, but it
22      has always troubled me a bit that if he were at the apex, how
23      he wouldn't be in all branches of the case.  But I don't fault
24      the government for this, and I am confident with their
25      brainpower that they must have felt there is an adequate reason
                          SOUTHERN DISTRICT REPORTERS, P.C.
                                    (212) 805-0300
```
                                                                         13
```
        74G8IANS
 1      for it.
 2                You could tell by my constant reference to the
 3      government that the relationship has always been on an A-plus
 4      level, and we strove, consistent with the facts, to find a
 5      level of punishment that would enable the defendant to see the
 6      light of day.
```

74G8IANS.txt

   7         Now, the defendant has a history, as a letter from the
   8  prison official, of intervening to save the life of a
   9  correction officer.  And that came as no surprise since -- it
  10  happened many years ago -- the defendant won the bronze star
  11  for bravery in the course of his service in the South Pacific.
  12        There are a number of things that mark this defendant
  13  so special that the government has adverted to extraordinary
  14  circumstances and special circumstances in the case.  The
  15  probation officer has referred to unique circumstances in the
  16  case.  And I think that it would be appropriate -- I know the
  17  guidelines are important to the Court, but I think this is a
  18  perfect sentence for 3553.
  19        There has been a misunderstanding with respect to the
  20  sentence that we ought to see or recommend to the Court,
  21  whether it be 18 to 24 or whether it be 30, as I think you
  22  said, to 37.  I think a resolution of this case, given the
  23  circumstances of the confusion, and I heard Mr. Treanor at one
  24  point talk about fairness, but that was favorable to the
  25  defendant when he talked about the element of fairness, I do

                  SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

14

74G8IANS

   1  think this is the kind of a sentence, your Honor, that you
   2  ought to impose between 18 and 24.
   3         It's important to note also that the defendant has
   4  been on house arrest for 21 months and probation reports that
   5  pretrial services reports that his service was exemplary while
   6  on house arrest.
   7         So there are many features in this case that warrant
   8  treating him not as one involved in violence, because that's
   9  never been any claim by the government, or someone who is
  10  involved in the more violent behavioral patterns, narcotics and
  11  the like.
  12        The defendant is accused, and it's quite serious, of
  13  taking money from a labor union, and that is a serious case,
  14  but after discussions with the government, we actually first
  15  decided, in the government's wisdom, what would be an
  16  appropriate sentence, and then consistent with the facts, we
  17  fashioned a plea that in all respects was honorable and
  18  correct.
  19        So I say to your Honor that given the circumstances
  20  of, A, the plea in Connecticut having come before the plea
  21  here, before the sentencing here was fortuitous -- for reasons
  22  of administration they had to have the plea prior to December
  23  31st of last year, there was nothing I could do about that --
  24  and, two, the confusion that has existed between the plea
  25  agreement and the finding of an additional point by the

                  SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

15

74G8IANS

   1  probation officer, this would be an appropriate case, given all
   2  of the circumstances, to treat it under 3553.
   3         Thank you, Judge.
   4         THE COURT:  Thank you very much.
   5         Mr. Ianniello, there is no requirement for you to
   6  speak, but if you would like to speak I would be glad to hear
   7  you.
   8         Can you hear me?
   9         Mr. Goldberg, does your client have difficulty hearing
  10  me?
  11         MR. GOLDBERG:  Yes, your Honor, but I explained it to

```
                            74G8IANS.txt
12   him.
13              THE COURT:  Yes.
14              THE DEFENDANT:  I'm sorry.
15              THE COURT:  Thank you.
16              Would the government like to be heard?
17              MR. TREANOR:  Well, yes, your Honor.  Nothing that I
18   think is very significant, but just to address a couple of
19   things Mr. Goldberg said.
20              The first has to do with the way we negotiated a plea
21   because typically we adhere to the guidelines and work through
22   the guidelines to achieve a plea.
23              I am not entirely sure that it's accurate to say we
24   started with what we thought was fair and crafted our plea from
25   that, but there was an element here in this case of really the
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

16

```
     74G8IANS
1    way the guidelines work would have really precluded, I think,
2    plea discussions in this case.  So we had to work out something
3    creative that got us to a place where both Mr. Goldberg, Mr.
4    Ianniello and the government could live with.  So, in that
5    sense, it's not entirely inaccurate the way Mr. Goldberg has
6    characterized it, but it was certainly an unusual plea
7    negotiation.
8              With regards to Mr. Ianniello's status as acting boss,
9    it's a significant fact.  However, it is very true to say that
10   Mr. Ianniello has been a part, in the government's view, a
11   rotating panel of senior Genovese crime family members that
12   have traded off responsibility for overseeing the family.
13   There has been some criticism of the government, I think, for
14   naming different people as acting Genovese boss, but the belief
15   is that there has been some rotation of senior members, and so
16   to name multiple individuals, as Mr. Goldberg has done in his
17   submission, is merely just an acknowledgment of that fact.
18              The final thing has to do with discussions that I had
19   with Mr. Goldberg about Mr. Ianniello and how much time we
20   thought he needed to face.  Your Honor, in my discussions with
21   Mr. Goldberg, I didn't purport in any way to know Mr. Ianniello
22   or understand really what kind of person he is.  I did get an
23   idea of what type of conduct he has engaged in, and I can say
24   that our view of Mr. Ianniello changed over time from when he
25   was first arrested because it became clear that there was not
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

17

```
     74G8IANS
1    any recent episode of violent conduct that we could identify.
2    Certainly, there is the implication that being at the top of
3    the pyramid of the Genovese crime family that one is on top of
4    a lot of activities that could be and may be violent, but we
5    did not have any evidence that Mr. Ianniello was engaged in
6    anything directly that included violence.  That changed our
7    view of him a little bit and was reflected in our willingness
8    to come up with a guidelines range that we would argue was fair
9    in the case.
10             Finally, with regards to him not being charged in the
11   loansharking or gambling, generally, we look to tie -- even
12   though as acting boss I think it would be accurate to say he
13   has some responsibility for all the conduct in the family, we
14   would generally in our charging decisions look to have a little
15   more direct involvement before we made a charge.  I don't think
16   it was any belief on the government's part that he didn't have
```

```
                                   74G8IANS.txt
17      any involvement, but it was also unclear to what extent he did
18      have involvement, and that's why the indictment looked the way
19      that it did.
20              THE COURT:  Thank you.
21              Anything further, Mr. Goldberg?
22              MR. GOLDBERG:  No, your Honor.
23              THE COURT:  With respect to the sentencing guidelines,
24      which are advisory, I am required to compute what they would
25      be.
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                        18
        74G8IANS
 1              I accept that a 13 point total offense level is
 2      appropriate.  That has been characterized by the government as
 3      including a downward departure.  Normally the downward
 4      departure would come after total offense level, but we get to
 5      the same place no matter how it's characterized.
 6              I believe I should go through the calculation for the
 7      record.  The base offense level for the labor racketeering
 8      conduct with respect to Racketeering Act 1 in the information
 9      is 10.  Because the value of prohibited payments was more than
10      $30,000 but less than $70,000, six points are added.  For group
11      one then, the offense level would be 16.
12              With respect to obstruction of justice, the base
13      offense level is 14.  Because it resulted in substantial
14      interference with the administration of justice, the offense
15      level is increased three levels to level 17.
16              Let me note that because group two counts as one unit
17      and group one counts as an additional unit, the total number of
18      aggregated units is two.  This is all trumped by Section 2E1.1
19      that requires a level 19.
20              The defendant accepted responsibility and thus
21      deserves the three-level downward departure.
22              I accept that a downward departure of an additional
23      three points is warranted for the reasons stated by the
24      government.
25              The defendant's criminal history category is, in fact,
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                (212) 805-0300
                                                                        19
        74G8IANS
 1      V.  I understand that the plea agreement had it at III, and I
 2      understand my own obligation to calculate it as of today.  It
 3      would be V.  I will take into account, however, the
 4      expectations of the parties in the plea agreement.
 5              I would like to move now to the factors in 3553, and I
 6      note that, of course, labor racketeering and obstruction of
 7      justice are extraordinarily serious.
 8              The history and characteristics of defendant are
 9      mixed.  He has a history of criminal conduct.  He also has a
10      history of valor in the war and protecting a corrections
11      officer from other inmates, as well as assisting the government
12      in the Etan Patz case.
13              With respect to deterrence, I believe that defendant
14      is individually deterred already.  I believe that general
15      deterrence requires some time in custody.
16              It is my view that a sentence of 18 months with
17      respect to Count One and another 18 with respect to Count Two,
18      to run concurrently with one another, is the correct sentence,
19      and I impose that sentence.
20              Mr. Ianniello will be on supervised release for three
21      years.
                                    Page 9
```

74G8IANS.txt

```
22            A fine of $25,000 is recommended by probation.  No one
23   alluded to that.  I think I should give you a chance to do so
24   now.
25            MR. GOLDBERG:  I have no objection to that, your
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

20

74G8IANS
```
 1   Honor.
 2            THE COURT:  All right.
 3            MR. TREANOR:  Your Honor, there is only one count in
 4   the indictment with two racketeering acts.
 5            THE COURT:  I am very sorry.
 6            MR. TREANOR:  It's an information actually.
 7            THE COURT:  I see.  All right.  Thank you for
 8   correcting me, and I accept that.
 9            The sentence remains the same because the Court had
10   taken into account the only count in deciding that a sentence
11   at the low end of any guideline and at the low end of the
12   parties' agreement is appropriate, largely because of the
13   defendant's health and his very advanced age.  In addition, as
14   the government noted, the defendant's plea broke the logjam.
15            I impose a fine of $25,000 and the special assessment
16   of $100.
17            The standard and mandatory conditions of supervision
18   will apply.
19            In addition, the following special conditions will
20   apply:
21            The defendant shall not associate with any members or
22   associates of the Genovese organized crime family or Colombo
23   organized crime family.
24            The defendant shall provide the probation officer with
25   access to any requested financial information.
```
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

21

74G8IANS
```
 1            The defendant shall report to the nearest probation
 2   office within 24 hours of release from custody.
 3            I accept the designation suggested by defense counsel,
 4   and I will recommend it.
 5            It's my understanding that the government and
 6   defendant have agreed that defendant should not begin to serve
 7   any of his time until he has been sentenced and designated in
 8   the Connecticut case.
 9            MR. GOLDBERG:  That's correct, your Honor, and it's
10   May 9.
11            THE COURT:  The sentence date?
12            MR. GOLDBERG:  Yes.
13            MR. TREANOR:  I just want to clarify.  My recollection
14   and I think the plea agreement reflects that we had agreed that
15   he would stay out until a resolution of his guilt in that case,
16   but we have no objection to him staying out until he is
17   sentenced.  It's only a month from now.
18            THE COURT:  I think I got this notion from defense
19   counsel's submission, and so it may not be the same as the
20   government's view, but I think what is intended is both parties
21   want his time to be served concurrently so I would not begin
22   his sentence in this case on the day when he is sentenced in
23   Connecticut.  Rather, it would be the day when he is
24   designated --
25            MR. GOLDBERG:  Yes.
```
SOUTHERN DISTRICT REPORTERS, P.C.
Page 10

```
                            74G8IANS.txt
                           (212) 805-0300
                                                                    22
         74G8IANS
 1             THE COURT:  -- in Connecticut.
 2             MR. GOLDBERG:  Yes.
 3             MR. TREANOR:  That's fine, your Honor.
 4             THE COURT:  All right.  Then I delay defendant's
 5   voluntary surrender until a facility has been designated for
 6   him in the Connecticut case.
 7             MR. GOLDBERG:  May I have one minute to have a word
 8   with the prosecutor?
 9             THE COURT:  Sure.
10             (Pause)
11             MR. GOLDBERG:  Thank you, your Honor.
12             MR. LEVITT:  Excuse me, your Honor.  When the Court
13   said that it would accept the recommended designation that we
14   had made, was the Court referring to the recommendation of FMC
15   Devens, the medical facility?
16             THE COURT:  Yes.
17             MR. LEVITT:  I just wanted to make sure we were on the
18   same page.
19             THE COURT:  That will be in the judgment, yes.
20             MR. LEVITT:  Thank you, your Honor.
21             THE COURT:  Having accepted correction on the count as
22   to which defendant is being sentenced, I would like to be able
23   to state it correctly, and I am looking at the plea agreement.
24   I am not sure that I can do it myself.  Could the government
25   state on what part of what count the defendant is being
                     SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                                    23
         74G8IANS
 1   sentenced?
 2             MR. TREANOR:  Your Honor, the defendant is being
 3   sentenced on Count One, Racketeering Acts 1 and 2.
 4             THE COURT:  Thank you.
 5             Is there anything further before I read
 6   defendant -- go ahead, Mr. Treanor.  The forfeiture order?
 7             MR. TREANOR:  Yes, your Honor.
 8             MR. LEVITT:  Also, your Honor, I believe the
 9   underlying indictment against Mr. Ianniello will be dismissed
10   at this time?
11             THE COURT:  I take it the government so moves?
12             MR. TREANOR:  Yes, your Honor.
13             THE COURT:  All right.  The motion is granted.
14             Now, the forfeiture order calls for the government to
15   receive a check in the amount of $75,000 today.  Is that being
16   done?
17             MR. GOLDBERG:  I don't know if the defendant has a
18   check in his pocket, but certainly within a few days, if you
19   will grant him that, your Honor.
20             THE COURT:  I am just looking at the order.
21             MR. TREANOR:  I apologize.  I didn't anticipate that
22   particular provision would be in the proposed order.  I can
23   send another one over.
24             THE COURT:  I see.  I can just strike this.
25             MR. TREANOR:  Yes, your Honor.
                     SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                                    24
         74G8IANS
 1             THE COURT:  Strike the timing?
 2             MR. TREANOR:  Yes.
```

```
                                74G8IANS.txt
 3               THE COURT:  I will strike the timing and say within
 4    ten days?
 5               MR. GOLDBERG:  Yes.
 6               THE COURT:  I have signed the forfeiture order with
 7    the change.
 8               Anything else before I read defendant his appeal
 9    rights?
10               MR. TREANOR:  No, your Honor.
11               THE COURT:  Can Mr. Ianniello hear me?  If not, I have
12    to find another way to deal with this.
13               MR. GOLDBERG:  Can he sit?
14               THE COURT:  Yes, but can he hear me?
15               THE DEFENDANT:  Yes.
16               THE COURT:  Mr. Ianniello, you can appeal your
17    conviction if you believe that your guilty plea was somehow
18    unlawful or involuntary or if there is some other fundamental
19    defect in the proceedings that was not waived by your guilty
20    plea.  You also have a statutory right to appeal your sentence
21    under certain circumstances, particularly if you think the
22    sentence is contrary to law.  However, a defendant may waive
23    those rights as part of a plea agreement and you have entered
24    into a plea agreement that waives some or all of your rights to
25    appeal the sentence itself.  Such waivers are generally
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
                                                                       25
      74G8IANS
 1    enforceable, but if you believe the waiver is unenforceable,
 2    you can present that theory to the appellate court.  With few
 3    exceptions, any notice of appeal must be filed within ten days
 4    of judgment being entered in your case.  Judgment is likely to
 5    be entered within the next week.
 6               I know that the following does not apply to you, but
 7    it's part of what I must read you.  If you are not able to pay
 8    the cost of an appeal, you may apply for leave to appeal in
 9    forma pauperis.  If you request, the clerk of the court will
10    prepare and file a notice of appeal on your behalf.
11               Thank you.  We are adjourned.
12                                   oOo
13
14
15
16
17
18
19
20
21
22
23
24
25
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
```